IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Connie Hush,                                                    Case No. 3:16CV1775

        Plaintiff,

        v.                                             **ORDER**

Cedar Fair, L.P., *et al.*,

        Defendants.


This case arises out of a sexual assault that defendant Domenico Grace-Iacovetta (Iacovetta), a Caucasian male aged twenty-one, perpetrated against a fourteen-year-old African-American female. Plaintiff, the child's mother, brings this suit against defendant Cedar Fair, L.P., operator of Cedar Point Amusement Park, where the assault took place.

Pending is Cedar Fair's motion to dismiss plaintiff's amended complaint. (Doc. 20).

For the reasons that follow, I deny the motion to dismiss.

### Background

On Saturday, October 10, 2015, the plaintiff's daughter and Iacovetta were working at Cedar Point. The victim had worked there during the Summer, and she and Iacovetta were, according to the complaint, "[a]s part of fall weekend events," among those whom "Cedar Point Amusement Park employs [as] additional persons to assist in the operation of its carnival game." (Doc. 16, ¶14). Iacovetta was "part of the contingent of weekend employees who were participating and representing the Phi kappa (*sic*) Tau fraternity to obtain funds for their fraternity from monetary compensation paid to them as weekend workers at Cedar Point. (*Id.* at ¶19).

The complaint alleges that "[a]t all times Cedar Point management maintains sole discretion over the assignments, the right to assignments and the number of hours and locations to which these persons perform work for Cedar Point," (*Id*. at ¶15), requiring "[t]hese short term employees [to] adhere to the rules and regulations of Cedar Point as well as grooming rules imposed by Cedar Point." (*Id*. at ¶16). Such "short term employees receive a set hourly wage which reflects each hour of work completed by each employee as well as a small monetary per hour bonus for satisfactorily fulfilling their work commitment." (*Id*. at ¶17). In addition, "Cedar Point provides further incentives and perks to these employees including the use of weekend lodging and free admission to the amusement park after work hours." (*Id*. at ¶18).

Iacovetta and the minor girl "left the carnival games area together during work hours at approximately 5:00 p.m. accompanying a group of others to the Cedar Point housing dormitory in which Mr. Grace-Iacovetta and other college members were staying." (*Id.* at ¶27). Cedar Point imposes "a strict policy which prohibits the entrance by minors under the age of 18" (*id.* at ¶32) and "a strict policy which prohibits bringing and/or serving alcohol by any guests or persons into the housing dormitories which it operates." (*Id.* at ¶33). The Park stations security guards "at the entrance of its dormitories to enforce the policies." (*Id.* at ¶34). Such guards are "required to check the badge worn by minors which prominently displays their age." (*Id.* at ¶35). Iacovetta and the minor girl walked past the guard into the dormitory.

Left alone in Iacovetta's room, where she was not supposed to be, the girl drank alcohol. Iacovetta then sexually assaulted the child, leaving his DNA on the girl's breast.[1]

---

[1] The parties have larded their briefs with a considerable amount of putative factual assertions, none of which have I considered in adjudication of the defendant's motion to dismiss. *See, e.g., Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) ("Matters outside of the pleadings are not to be considered by a court in ruling on a [Rule] 12(b)(6) motion to dismiss.").

## Discussion

### 1. Plaintiff's Claims

Plaintiff asserts duplicative claims against Cedar Fair under Title VII, 42 U.S.C. § 2000, *et seq.*, and O.R.C. § 4112, seeking recovery against Cedar Fair for Iacovetta's assault on her daughter. The complaint alleges that Iacovetta's sexual assault constituted actionable sexual harassment under those provisions. Plaintiff asserts that Iacovetta was an "employee" as defined in § 2000e(f) of Title VII, and Cedar Fair negligently created workplace conditions that put her daughter at a foreseeable risk of harm. Following Iacovetta's sexual assault, which, plaintiff alleges, created an actionable hostile work environment, her daughter quit her job.

Plaintiff alleges that the actionable negligence on Cedar Fair's part consisted of:

- Failing to fulfill its statutory duty to monitor the actual working hours of its own minor employees which resulted in a prolonged absence by K.C. from her work station;

- Failing to enforce its own policies prohibiting the entrance of minors to its dormitories and dormitory rooms;

- Failing to inquire about the influx and surge of forcible sexual assaults which was a known problem at the Indiana University of Pennsylvania and fraternities at the Indiana University of Pennsylvania prior to the hire of male students from that university;

- Failing to and negligently supervising weekend hires of persons with no safeguards in place;

- Placing significantly older, untrained and unsupervised temporary male weekend help alone with 14 year old female employees;

- Failing to enforce its own security policies.

(*Id.* ¶43).

Cedar Fair seeks dismissal on the basis that: 1) the complaint fails adequately to plead that Iacovetta was its employee under § 2000e(f); 2) Iacovetta's sexual assault did not create a hostile

work environment; and 3) it did not negligently create workplace conditions that created a foreseeable risk of harm to plaintiff's daughter.

I overrule the motion to dismiss because: 1) whether Iacovetta was an employee under § 2000e(f) is immaterial; 2) the complaint adequately alleges Iacovetta's sexual assault created a hostile work environment; and 3) the complaint adequately alleges Cedar Fair negligently created the conditions that created a foreseeable risk of harm to the plaintiff's daughter.

## 2. Discussion

According to the Sixth Circuit, to establish a claim for sexual harassment under Title VII, a plaintiff must prove:

> 1) the employee is a member of a protected class, 2) the employee was subject to unwelcomed sexual harassment, 3) the harassment was based on the employee's sex, 4) the harassment created a hostile work environment, and 5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior.

*Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000) (citing *Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir.1999)).

Indisputably, the complaint adequately alleges facts relating to three of the five elements: 1) the victim was within the protected class; 2) the assault was unwelcome; and 3) Iacovetta assaulted the victim because of her gender.

Cedar Fair challenges the complaint's adequacy relating to creation of a hostile work environment and whether it took adequate precautions against a foreseeable risk of harm to the plaintiff's child.

In addition, Cedar Fair claims that it cannot be held liable for Iacovetta's acts because he was not its employee at the time. I discuss this contention first and then turn to the issues of hostile work environment and whether Cedar Fair took reasonable steps to prevent the sexual harassment Iacovetta inflicted on plaintiff's daughter.

4

## A. Whether Iacovetta Was an
## Employee Under Title VII

The parties argue over whether Iacovetta was a Cedar Fair employee under § 2000e(f). That dispute misses the mark because whatever the nature of Iacovetta's relationship with Cedar Fair that weekend, Cedar Fair can be held liable if it negligently created workplace conditions that put plaintiff's daughter at a foreseeable risk of harm. This is so for two reasons.

First, what matters is the fact of the employer-employee relationship between Cedar Fair and plaintiff's daughter, not any such relationship or lack thereof *vis-a-vis* Cedar Fair and Iacovetta. Plaintiff's daughter, not Iacovetta, was the person whom Title VII protects. Were *she* not an employee, her mother would have no standing to bring her claims under Title VII or O.R.C. § 4112. As an employee, plaintiff's daughter came directly within Title VII's scope.

Second, as the court noted in *Moore v. Countryside Care Center, Inc.*, 2014 WL 4110760, *3 (E.D. Mich.);

> In the context of sexual harassment, employers have been held liable in other circuits for harassment by non-employees, including customers, clients, and patrons. See, *e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073 (10th Cir.1998); *Ligenza v. Genesis Health Ventures of Mass.*, 995 F. Supp. 226, 230 (D. Mass.1998) (finding that a nursing home may be held liable for patient misconduct when the employer has the requisite knowledge and control over the situation and fails to take remedial action).[2]

---

[2] The courts in both *Lockard* and *Ligenza* cited 29 C.F.R. § 1604.11(e), which currently reads:

> An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

*Lockard, supra*, 162 F.3d at 1073; *Ligenza, supra,* 995 F. Supp. at 230.

5

*Accord, e.g., E.E.O.C. v. Cromer Food Servs., Inc.*, 414 Fed. Appx. 602, 606-07 (4th Cir. 2011); *Dunn v. Washington Cty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005); *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 n. 2 (11th Cir. 2003) (dictum).

In *Dunn*, the Seventh Circuit explained the reason for not differentiating between employees and non-employees: "Because liability is direct rather than derivative, it makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer. Ability to 'control' . . . the actor plays no role." 429 F.3d at 691.

Whether Iacovetta was or was not an employee of Cedar Fair is not relevant or material; what matters is whether Cedar Fair negligently allowed workplace conditions to exist that created a foreseeable risk of harm to the plaintiff's child.

### B. Hostile Work Environment

In the typical sexual harassment case, "to determine whether a hostile work environment exists, the Court must consider: (1) whether the conduct was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive; and (2) whether the victim subjectively regarded the environment as abusive" *Hamilton v. Anderson Forest Prods., Inc.*, 2016 WL 4734375, *2 (W.D. Ky.) (citing *Jordan v. City of Cleveland,* 464 F.3d 584, 599 (6th Cir. 2006))

This, though, is not a typical case where the pervasiveness of the offensive conduct is at issue. Instead, this case involves an aggravated sexual assault resulting in the predator's sperm being left on the child-victim's breast.

In the Sixth Circuit, a single act of sexual assault, like that which Iacovetta committed, suffices to allege an actionable claim for creation of a sex-based hostile work environment. *Ault v. Oberlin Coll.*, 620 Fed. Appx. 395, 402 (6th Cir. 2015) (assailant shoved victim against shelves in a walk-in cooler and rubbed his genitals against her); *see also Kalich v. AT&T Mobility, LLC,* 679 F.3d 464, 474 (6th Cir. 2012) ("*Except in the case of extreme incidents such as rape or sexual*

*assault*, a single, isolated event is typically insufficient to create a hostile work environment.") (dictum) (emphasis supplied).[3]

Therefore, the complaint adequately alleges that Iacovetta's sexual assault created a hostile work environment.

## C. Negligence

In the typical case of sexual harassment allegedly resulting in an unacceptably hostile work environment–*i.e,* gender-based slurs and insults, offensive or suggestive language or statements, innuendo, or gestures, *quid pro quo* or other requests/demands for sexual favors, *etc.*–an employer, to avoid liability, must show that it, on having knowledge or reason to know about the situation, undertook "to implement prompt and appropriate corrective action." *See, e.g.*, *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 (6th Cir. 1994)). An employer is only liable when "its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Blankenship v. Parke Care Ctrs., Inc*., 123 F.3d 868, 873 (6th Cir. 1997).

In this case, involving as it did a single incident of sexual harassment, the "appropriate" action was not "remedial" or "corrective," but rather preventative. This does not require actual foreknowledge; instead, it calls for attentive foresight.

Contrary to Cedar Fair's contention that potential harassment is not actionable, ordinary Ohio negligence principles relating to risk of harm and foreseeability apply in this context:

---

[3] Other Circuits agree. *E.g., Lapka v. Chertoff*, 517 F.3d 974, 983-84 (7th Cir.2008) (rape by co-worker); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1242-43 (10th Cir. 2001) (patient attacked and digitally penetrated therapist); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ("[A] single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability."); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'").

> "Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated. Reasonable anticipation is that expectation created in the mind of the ordinarily prudent and competent person as the consequence of his reaction to any given set of circumstances. If such expectation carries recognition that the given set of circumstances is suggestive of danger, then failure to take appropriate safety measures constitutes negligence. On the contrary, there is no duty to guard when there is no danger reasonably to be apprehended. Negligence is gauged by the ability to anticipate. Precaution is a duty only so far as there is reason for apprehension. Reasonable apprehension does not include anticipation of every conceivable injury. There is no duty to guard against remote and doubtful dangers."

*Wheatley v. Marietta Coll.*, 48 N.E.3d 587, 608-09 (Ohio App. 2016) (quoting *Hetrick v. Marion-Res. Power Co.*, 141 Ohio St. 347, 358-59 (1943) (quoting 1 Shearman and Redfield on Negligence, Rev. Ed., 50, § 24)).

The "particular defendant need not foresee the specific harm caused by its negligence, if the harm would have been foreseeable to a reasonably prudent person." *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609, 619 (1995).

But where injury results to a business invitee, such as plaintiff's daughter, *Gillotti v. Rimedio*, 2003 WL 22427760, *4 (Ohio App.), from a third party's criminal acts, "Ohio courts appear to have taken a strict approach to the foreseeability analysis." *Wheatley, supra,* 48 N.E.3d at 609. "'To show foreseeability [of a third person's criminal act], one must demonstrate that the specific harm at issue was foreseeable.'" *Heimberger v. Zeal Hotel Grp., Ltd.*, 42 N.E.3d 323, 332 (Ohio App. 2015) (quoting *Maier v. Serv-All Maint., Inc.*, 705 N.E.2d 1268, 1274 (Ohio App. 1997)).

In making this assessment, a court (or jury) takes into account the totality of the circumstances. *Gillotti, supra,* 2003 WL 22427760, at *4. The "totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under a duty to protect against the criminal acts of third parties." *Id.* at *5.

Taking these principles of Ohio negligence/foreseeability law into account, I conclude that the plaintiff has adequately pled negligence on the defendant's part. That Cedar Fair apprehended,

to some degree at least, that it needed to protect its employee/business invitees from danger–including criminal acts–is apparent from maintaining security (*i.e.,* a guard at the dormitory entrance who keeps minors (and, presumably, others who do not belong in the dorm because of the dangers they may pose) out).

The complaint alleges that Cedar Fair failed to carry through its duty to maintain dorm security as the child victim was taken inside. The guard was there, or supposed to be there, to make sure no one–a minor female employee or a park goer from outside–entered the dorm. It is a fair and entirely plausible inference from the facts alleged in the complaint that Cedar Fair wanted that precaution in place because it knew that leaving its dormitory doors open to anyone and everyone could and, in time, would lead to criminal activity within the dorm.

For whatever reason, when Iacovetta took the plaintiff's daughter into the dorm, the protection against that entry and, thus, the protection against sexual assault, was not there. It is also plausible to conclude that but for the absence or absent-mindedness of a guard, no harm would have befallen the young girl.

Cedar Fair, a rational jury could find, knew of the danger to persons in its dormitories if the doorways were unguarded; those dangers encompassed, a rational jury could find, criminal acts by third parties, whether they themselves were lawfully in the dorm or not.

The complaint also alleges insufficient supervisory oversight of "the actual working hours of its own minor employees which resulted in a prolonged absence by [plaintiff's daughter] from her work station," while concurrently failing adequately to supervise temporary workers like Iacovetta.[4] (Doc. 16, ¶43). A plausible inference arises from that allegation that harm, including harm from criminal acts, could threaten a minor female employee if lax oversight allowed her to roam around

---

[4] I note that, in any event, Cedar Fair was, contrary to plaintiff's contention, under no duty to conduct a criminal background check of Iacovetta and his companions. *See Peters v. Ashtabula Metro. Hous. Auth.*, 624 N.E.2d 1088, 1091 (Ohio App. 1993).

the park when she was to have been at her work station. Alone, that inference might not be enough to find the complaint's allegation of negligence sufficient. But a rational jury might fairly find that the failure to supervise the child's comings and goings contributed to what happened to her that afternoon.

I conclude that at this stage, plaintiff has alleged circumstances that entitle her to proceed with this litigation.

### Conclusion

Whether Iacovetta was or was not an employee while at Cedar Point on October 14, 2015, does not matter. While there, Iacovetta sexually assaulted a fourteen-year-old girl. The complaint's recitation of the totality of the circumstances suffices to assert a plausible claim for sexual harassment that created a hostile workplace environment.

Viewed most strongly in plaintiff's favor, the complaint also adequately alleges that Cedar Fair foresaw the risk of harm, including harm from criminal acts, that would arise to persons in its dorms if the doorway were not guarded adequately. It does not matter whether the victim or the perpetrator would have been kept out had the doorkeeper done his or her job. What matters is the foreseeability that unauthorized entry created the danger, and that among those dangers was crime and resulting harm.

It is, accordingly,

ORDERED THAT: defendant's motion to dismiss (Doc. 20) be, and the same hereby is, denied.

The Clerk shall forthwith schedule a telephonic status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge